UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

                    Plaintiff,

        v.

JAKOBINA ADAMS individually and
as the personal representative of the
estate of James Adams,

                    Defendant.

CASE NO. 3:21-CV-5463-DWC

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

        Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR

13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.

Dkt. 11. Currently before the Court is Plaintiff State Farm Fire & Casualty Company's Motion

for Summary Judgment on No Duty to Defend or Indemnify. Dkt. 17. The Court concludes

Defendant/Counter-Claimant Jakobina Adams, individually and as the personal representative of

the estate of James Adams, has not rebutted State Farm's evidence showing State Farm is

1  entitled to summary judgment. Accordingly, the Court grants the Motion for Summary Judgment

2  (Dkt. 17) and this case is closed.

3  **I.      Background**

4         On June 25, 2021, State Farm filed this lawsuit seeking declaratory relief against Adams.

5  Dkt. 1. State Farm seeks a determination that it had no duty to defend or indemnify Daniel

6  Durrance under a liability insurance policy issued to Austin Gorst with respect to a collision that

7  occurred on July 4, 2015, in which James and Jakobina Adams were injured ("the collision"). *Id*.

8         Adams filed an Answer to the Complaint for Declaratory Judgment and Counterclaim on

9  July 13, 2021. Dkt. 5. Adams seeks declaratory relief and contends State Farm is liable for

10 breach of contract and bad faith from its actions arising from the collision. *Id*.

11        State Farm filed the Motion for Summary Judgment on September 30, 2021. Dkt. 17; *see*

12 *also* Dkt. 18-19 (supporting evidence). Adams filed her Response on October 18, 2021. Dkt. 20;

13 *see also* Dkt. 21-22 (supporting evidence). State Farm filed its Reply on October 21, 2021. Dkt.

14 23; *see also* Dkt. 24 (supporting evidence). The parties did not request oral argument and the

15 Court has considered the record and finds this matter can be resolved on the record without oral

16 argument.

17 **II.     Standard of Review**

18        Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

19 file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

20 movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

21 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

22 showing on an essential element of a claim in the case on which the nonmoving party has the

23 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

24

1    fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

2    the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

3    (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

4    metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

5    material fact exists if there is sufficient evidence supporting the claimed factual dispute,

6    requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

7    *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

8    626, 630 (9th Cir. 1987).

9    **III.**    **Discussion**

10         State Farm asserts it does not have a duty to defend or indemnify Durrance because

11    Durrance never tendered the underlying lawsuit to State Farm. Dkt. 17.

12         A.    <u>Legal Standard</u>

13         Under Washington law, an insurer owes its insured two primary duties: the duty to

14    indemnify and the duty to defend. *See Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d

15    398, 229 P.3d 693, 696 (2010). The duty to indemnify—that is, the duty to pay the legal

16    obligation of the insured for covered claims—only exists at the time liability is assessed, and

17    only if the insurance policy covers the conduct giving rise to the liability. *Id.* The duty to defend,

18    on the other hand, is much broader, and is triggered at the time an action within the terms of the

19    policy is initiated against the insured. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash.2d

20    751, 58 P.3d 276, 282 (2002). The duty to defend imposes an obligation to represent the

21    insured's interests throughout the lifecycle of the claims against it, including requiring the

22    insurer to pursue a fair settlement of the claims. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*,

23    165 Wash.2d 122, 196 P.3d 664, 669 (2008).

24

1       B.   <u>Evidence</u>

2           The evidence shows that, on July 4, 2015, Durrance was driving a 2011 Infiniti that was

3    insured by State Farm under a policy belonging to Austin Gorst. Dkt. 19, Jurgens Dec. at ¶ 3.

4    The Infinti was owned by John Gorst, Austin's father.[1] *Id*. Durrance caused a collision with the

5    Infiniti and a vehicle occupied by James and Jakobina Adams. *Id*. The Adams were injured in the

6    collision. *Id*. The "collision was originally reported to State Farm by USAA insurance, which

7    was the Adamses' insurer." *Id*.

8           State Farm began an investigation to determine if Durrance qualified as an "insured"

9    under the policy. Dkt. 19, Jurgens Dec. at ¶ 4. To be qualified, Durrance had to have Austin's

10   consent to drive the Infiniti. *Id*.

11          State Farm received a letter from Daryl Graves Law on August 4, 2015, which stated the

12   law firm represented Durrance. Dkt. 19, Jurgens Dec. at ¶ ; Dkt. 19-3 at 2. Graves requested

13   State Farm refrain from contacting Durrance and stated he would not allow State Farm to

14   interview Durrance as Durrance had been charged criminally. *See* Dkt. 19, Jurgens Dec. at ¶¶ 6,

15   8; Dkt. 19-3 at 2. "The only information [State Farm] received from Mr. Durrance was a

16   telephone call from Mr. Graves, stating that he had spoken to Mr. Durrance, and Mr. Durrance

17   believed he had implied permission to drive the Infiniti because he had been close to Austin and

18   John for a long time, and were like family." Dkt. 19, Jurgens Dec. at ¶ 8.

19          During State Farm's investigation, State Farm determined Durrance had his own

20   automobile insurance through Geico General Insurance Company. Dkt. 19, Jurgens Dec. at ¶ 9.

21   State Farm also learned Austin and John strongly denied giving Durrance permission to drive the

22   Infiniti. *Id*. at 10. Austin and John informed State Farm they would not have given Durrance

23   _____

24          [1] The Court will refer to John Gorst and Austin Gorst by their first names to avoid confusion.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 4

1   permission on the day of the collision because they learned he was inebriated. *Id*. "Austin denied

2   that Mr. Durrance had driven the Infiniti on any prior occasion." *Id*. Austin provided a sworn

3   affidavit on September 18, 2015 stating Durrance did not have permission, either expressed or

4   implied, to operate the Infiniti at the time of the collision. Dkt. 19-7. After completing the

5   investigation, State Farm determined Durrance did not qualify as an insured under the State Farm

6   policy because he did not have consent to drive the Infiniti on July 4, 2015. Dkt. 19, Jurgens

7   Dec. at ¶ 13.

8         A letter dated July 15, 2015 from Geico to Mr. Adams states that Geico resolved its

9   coverage investigation regarding the collision with its policyholder, Durrance, and determined it

10  would be secondary and State Farm would be primary coverage for claims related to the

11  collision. Dkt. 21-2.

12        On July 28, 2015, State Farm received a letter from the Hester Law Group stating Lance

13  Hester represented James and Jakobina Adams and directed State Farm to correspond with

14  Hester. Dkt. 19, Jurgens Dec. at ¶ 7; Dkt. 19-5 at 2-3. State Farm responded to Hester's letter

15  stating State Farm had a coverage issue regarding permissive use and the driver of the vehicle

16  and would contact Hester's office after completing the investigation. Dkt. 19-6 at 2. On

17  November 6, 2015, Hester sent a letter to State Farm requesting information about John's policy

18  limits. Dkt. 21-3.

19        On December 22, 2015, State Farm sent a letter to Daryl Graves Law, Hester Law Group,

20  and Geico stating State Farm was denying any and all coverage because Durrance did not qualify

21  as an insured under Austin's policy. Dkt. 19, Jurgens Dec. at ¶ 14; *see also* Dkt. 19-8, 19-9, 19-

22  10. No one disputed the denial of coverage until December 21, 2016, a year later, when Hester

23  sent State Farm a letter stating he believed the denial of coverage was premature. Dkt. 19,

24

1   Jurgens Dec. at ¶ 15; Dkt. 19-11. State Farm considered Hester's letter and "determined that it

2   would not require [State Farm] to change [their] decision." Dkt. 19, Jurgens Dec. at ¶ 15. State

3   Farm informed Hester that State Farm would stand on its coverage denial. *Id*.

4       On May 14, 2018, Hester sent a policy limits demand letter about the collision regarding

5   "insureds" John, Austin, and Durrance. Dkt. 21-4. State Farm responded on May 23, 2018,

6   identifying the insured as Austin and stating they have denied the claim as Durrance did not have

7   permission to drive the Infiniti. Dkt. 21-5.

8       The Adams filed a complaint for damages in the Pierce County Superior Court

9   ("underlying lawsuit") on June 13, 2018. Dkt. 18-1. The Adams sued Durrance, John, and Austin

10  for injuries arising from the collision. *Id*. Mindy Jurgens, the Claim Specialist assigned to the

11  claim, learned the Adams sued Durrance, John, and Austin. Dkt. 19, Jurgens Dec. at ¶ 16. "John

12  and Austin tendered the suit to State Farm and State Farm defended them. No one tendered the

13  suit papers to [Jurgens] (or anyone at State Farm, to [her] knowledge), on behalf of Mr.

14  Durrance." *Id*. In responses to discovery, State Farm stated that neither Durrance, Durrance's

15  criminal lawyer, or Durrance's civil defense lawyer tendered the underlying lawsuit to State

16  Farm for assessment of any duty to defend and so State Farm did not evaluate whether to defend

17  the underlying lawsuit. *See* Dkt. 21-16 at 12, 15.

18       C.  Analysis

19       State Farm's position is that Durrance never tendered the underlying lawsuit to State

20  Farm to affirmatively request State Farm's participation. Dkt. 17. The parties have not cited, nor

21  does the Court find, any Washington case related to tender that presents a fact pattern similar to

22  what is presented in this case. The Court must therefore "use [its] best judgment to predict" how

23

24

1   the Washington Supreme Court would decide the issue. *United States v. Bibbins,* 637 F.3d 1087,

2   1095 (9th Cir. 2011).

3           Washington law establishes that, to tender a defense, "the insured must affirmatively

4   inform the insurer that its participation is desired." *Unigard Ins. Co. v. Leven*, 97 Wash.App.

5   417, 427 (1999). *Id. Leven* places the burden of first action—of "affirmatively" requesting the

6   insurer's involvement—on the insured. "'[A]n insurer cannot be expected to anticipate when or

7   if an insured will make a claim for coverage.'" *Grifin v. Allstate Ins. Co.,* 108 Wash.App. 133,

8   140 (2001) (alteration in original) (quoting *Leven*, 97 Wash.App. at 427). As such, "[t]he duties

9   to defend and indemnify do not become *legal obligations* until a claim for defense or indemnity

10  is tendered." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 421 (2008)

11  (emphasis in original).

12          State Farm has put forth evidence that Durrance did not tender the underlying lawsuit to

13  State Farm for defense or indemnity and did not ask State Farm to participate in the underlying

14  lawsuit. *See* Dkt. 19, Jurgens Dec. at ¶ 16. While Washington law does not require a formal letter

15  tendering defense or indemnity, Durrance must have done enough to affirmatively request State

16  Farm participate on his behalf. There is no indication from the evidence before the Court that

17  Durrance tendered a claim for defense or indemnity to State Farm and that State Farm denied

18  that tender. *See Madera West Condominium Ass'n v. First Specialty Ins. Corp.*, 2013 WL

19  4015649 at *7 (W.D. Wash. Aug. 6, 2013) (finding the insured did not send a formal tender letter

20  but the insurer was on notice of the claim and the insurer characterized the insured's request for

21  assistance as "the tender of defense" and expressly declined it). Further, there is no evidence

22  Durrance, or someone on his behalf, communicated a request for assistance to State Farm. As

23  such, the record fails to show Durrance affirmatively informed State Farm that its participation

24

was desired in the underlying lawsuit. Therefore, State Farm's alleged duty to defend or indemnify Durrance never became a legal obligation.

In Response to State Farm's Motion for Summary Judgment, Adams provides several arguments which the Court will discuss in turn. First, Adams contends State Farm was aware of the underlying lawsuit because State Farm intervened regarding the issue of Durrance's permissive use of the Infiniti. Dkt. 20. The Court agrees that State Farm had notice of the underlying lawsuit. *See Kidwell v. Chuck Olson Oldsmobile, Inc.*, 4 Wash.App. 471, 474 (1971) (finding notice requirements were fulfilled on behalf of the insured and permissive driver when the insured provided the insurer with a copy of the summons).[2] However, "[m]ere notice of a claim is insufficient to establish tender, whereby an insured must affirmatively inform the insurer that its participation is desired." *Illinois Nat'l Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 2021 WL 4476868, at *5 (W.D. Wash. Sept. 30, 2021). Durance did not affirmatively inform State Farm that he sought State Farm's participation in the underlying lawsuit. The fact that State Farm was aware of the underlying lawsuit, intervened, and defended John and Austin is not material to whether Durrance tendered the claim to State Farm.

Finding that State Farm's notice of the underlying lawsuit is immaterial to this Court's determination is consistent with Washington's selective tender rule. The selective tender rule "states that where an insured has not tendered a claim to an insurer, that insurer is excused from its duty to contribute to a settlement of the claim." *Mut. of Enumclaw Ins. Co.*, 164 Wash.2d at

---

[2] In *Kidwell*, the court stated, "We hold that the notice requirements of the policy were fulfilled by [the policy holder] both as to its own liability and as to the liability of its permissive driver." 4 Wash.App. at 474. While *Kidwell* appears analogous to this case, the Court finds notice under the policy is not at issue here. Rather, at issue is whether Durrance tendered the defense to State Farm. In other words, did Durrance affirmatively notify State Farm he sought State Farm's participation in the underlying lawsuit related to claims against Durrance. Thus, *Kidwell*'s holding is not relevant to this Court's determination.

421. The selective tender rule "has sound underpinnings" because it "preserves the insured's right to invoke or not to invoke the terms of its insurance contracts." *Id.* at 421-22.

> An insured may choose not to tender a claim to its insurer for a variety of reasons. Like a driver involved in a minor accident, an insured may choose not to tender in order to avoid a premium increase. The insured may also want to preserve its policy limits for other claims, or simply to safeguard its relationship with its insurer. Whatever its reasons, an insured has the prerogative not to tender to a particular insurer.

*Mut. of Enumclaw Ins. Co.*, 164 Wash. 2d at 421–22.

Additionally, the Court notes that while the record is silent, Durrance may have chosen to not tender the claim to State Farm for a variety of reasons. For example, as Austin was the policyholder for the State Farm policy, Durrance may have chosen to not tender the underlying lawsuit to State Farm in an attempt to preserve his relationship with John and Austin. Further, Durrance appears to have tendered the underlying lawsuit to his insurance company, Geico, for defense, indicating he decided to use his own insurance company to defend him. For the foregoing reasons, Adams' argument that State Farm was on notice of the underlying lawsuit is immaterial to the issue of whether Durrance tendered the defense to State Farm.

Adams next argues Austin's insurance policy does not state the insured must tender a claim and ask to be defended. Dkt. 20 at 20. The relevant terms of Austin's State Farm policy state,

> If a claim is made against an *insured,* then that *insured* must immediately send *us* every demand, notice, and claim received.

> If a lawsuit is filed against an *insured,* then that *insured* must immediately send *us* every summons and legal process received.

Dkt. 18-7 at 41 (emphasis in original). Under the policy, "insured" is defined, in relevant part, as "any other *person* for his or her use of: (a) *your car*[.] . . . Such vehicle must be used within the scope of *your* consent." (emphasis in original). *Id.* at 10. The policy places the burden on the

1  insured to send notice of a claim, demand, or lawsuit.[3] Durrance did not comply with the policy

2  and send notice or otherwise affirmatively request State Farm's participation in the underlying

3  lawsuit on Durrance's behalf.[4]

4         Adams also contends State Farm was not prejudiced by Durrance's failure to tender a

5  claim or defense. Dkt. 20 at 22. "The 'late tender' rule provides that an insured's breach of an

6  insurance contract through failure to notify the insurer of a claim does not relieve the insurer of

7  the obligation to perform under the insurance contract unless the insurer can prove that the late

8  notice caused it actual and substantial prejudice." *Mut. of Enumclaw Ins. Co.*, 164 Wash. 2d at

9  422. In addition, Adams states the insurer must show prejudice with respect to a non-cooperation

10 clause. Dkt. 20 at 15. Here, State Farm asserts Durrance never requested Start Farm defend him.

11 Dkt. 19, Jurgens Dec. at ¶ 16. State Farm has not moved for summary judgment because

12 Durrance delayed in tendering the underlying lawsuit to State Farm or because he failed to

13 cooperate with State Farm. State Farm seeks summary judgment because Durrance never

14 tendered the underlying lawsuit to State Farm with a request that State Farm defend or indemnify

15 him. Therefore, the Court is not persuaded by Adams' argument that State Farm is required to

16 show actual and substantial prejudice to prevail on its motion for summary judgment.

17        Finally, Adams argues this case is analogous to *Besel v. Viking Ins. Co.*, 146 Wn.2d 730

18 (2002). Dkt. 20 at 16-17, 22-23. The Court finds *Besel* is silent regarding whether the insured

19

20 _____

21        [3] "[I]n the context of insurance contracts, when coverage and exclusions are defined in terms of 'the insured,' Washington courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint. This creates separate contracts between the insurer and each of the insureds." *Truck Ins.*

22 *Exch. v. BRE Properties, Inc.*, 119 Wash. App. 582, 589 (2003).

        [4] Adams argues that she does not know if Durrance was aware of the policy or if State Farm sent him a copy of the policy. Dkt. 20 at 22. She speculates that, because Durrance may not have had a copy of the policy,

23 Durrance did not understand his obligations under the policy. *Id*. Adams' speculation is not sufficient to overcome summary judgment. And, Adams has not provided evidence, such as a declaration from Durrance, stating Durrance

24 was unaware of the contractual obligations. Therefore, the Court finds this argument unpersuasive.

affirmatively requested the insurer defend a claim/lawsuit. Rather, the facts in *Besel* indicate the

insurer was unresponsive and refused to settle a claim because the claim could exceed the

insured's total coverage. 146 Wn.3d at 733-34. The insured settled the case with the injured

party. After the insurer paid policy limits, the injured party filed suit against the insurer. *Id*. at

734. As there is no indication the insurer claimed the insured did not tender a claim and request

defense of that claim and as the court did not discuss this set of facts, *Besel* is not instructive in

this case.

In sum, the Court finds Adams has provided arguments that are unpersuasive for the facts

in this case. Adams does not address Durrance's failure to affirmatively request State Farm's

involvement in the underlying lawsuit. As Adams has not refuted State Farm's showing that

Durrance did not affirmatively request State Farm defend him in the underlying lawsuit, Adams

has not shown there is a genuine issue of material fact that would make summary judgment

inappropriate in this case.

**IV.     Rule 56(d) Motion**

Adams requests the Court deny the Motion for Summary Judgment or continue the

Motion for 120 days to allow Adams to conduct discovery and respond to the Motion. Dkt. 20,

21.

Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary

judgment when they have not had sufficient time to develop affirmative evidence." *United States

v. Kitsap Physicians Serv.,* 314 F.3d 995, 1000 (9th Cir. 2002). Under Rule 56(d), if the

nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present

facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

appropriate order." Fed. R. Civ. P. 56(d). A party requesting a continuance, denial, or other order

under Fed. R. Civ. P. 56(d), must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *Cal. on behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Failure to comply with these requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Id*. (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)).

John Wilson, counsel for Adams, has filed a Declaration stating State Farm has not provided responses to several discovery requests. Dkt. 21, Wilson Dec. Wilson states Adams has not received the reservation of rights correspondence between State Farm and Durrance, all communication between State Farm and Durrance and State Farm and Geico, claim file notes regarding conversations between State Farm and Durrance and his attorneys, and answers to a list of questions. *Id*. The discovery deadline is currently set to expire on July 5, 2022. Dkt. 12.

The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists and that it would prevent summary judgment. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). The movant "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). Here, Adams has not identified any specific information she believes will show Durrance tendered the underlying lawsuit to State Farm for defense or indemnity. *See* Dkt. 21, Wilson Dec. Moreover, Adams has not provided a basis for believing additional evidence exists or explained how the requested discovery will refute State Farm's summary judgment motion. *Id*.

1       Notably, the Settlement Agreement, Covenant Not to Execute and Assignment of Claims

2   ("Settlement Agreement") between Adams and Durrance and Adams' participation in the

3   underlying lawsuit appears to have provided Adams with access to evidence to refute summary

4   judgment. *See* Dkt. 24. In the Settlement Agreement, Durrance agreed to fully cooperate with

5   Adams in Adams' pursuit of the assigned claims. *Id*. at 8. Further, Durrance, by signing the

6   Settlement Agreement, directed his attorneys who represented him in the underlying lawsuit to

7   "allow Adams' counsel complete inspection and use of all materials and files relating to

8   representing Durrance in the lawsuit." *Id*. As such, Adams should have evidence to refute

9   summary judgment without conducting additional discovery. And, if not, Adams should have

10  been able to provide an affidavit that identifies the content of specific discoverable evidence that

11  would refute State Farm's summary judgment showing. For example, Adams could have

12  submitted a declaration by Durrance or his counsel explaining Durrance's position regarding

13  tendering the underlying lawsuit to State Farm for defense or indemnity. Adams has not done so.

14      In sum, Adams has not shown, nor does the Court find, the discovery identified in the

15  Rule 56(d) request could preclude summary judgment. Adams, further, has not shown there is

16  some basis for believing information or evidence exists that would preclude summary judgment.

17  Therefore, Adams' Rule 56(d) Motion is denied.

18  **V.      Conclusion**

19      "[T]he duty to defend or indemnify is not *legally enforceable* until the insured has

20  apprised its insurer that it seeks its performance." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash.

21  2d 872, 889 (2013) (emphasis in original). Here, the evidence presented to the Court shows

22  Durrance did not apprise State Farm that he sought State Farm's participation in the underlying

23  lawsuit on his behalf. Adams, despite access to Durrance and his counsel's files from the

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 13

1  underlying lawsuit, has not provided any evidence to refute State Farm's summary judgment

2  showing or shown additional discovery could preclude summary judgment. Thus, the record

3  shows State Farm's duty to defend or indemnify never became legally enforceable. Because

4  State Farm was not obligated to defend or indemnify the underlying lawsuit, Adams'

5  counterclaims of bad faith and breach of contract fail. *See Griffin v. Allstate Ins. Co.*, 108

6  Wash.App. 133 (2001) ("breach of the duty to defend cannot occur before tender").

7  State Farm was never legally obligated to defend or indemnify the underlying lawsuit.

8  Therefore, the Court finds no genuine issue of material fact remains in this case. State Farm's

9  Motion for Summary Judgment (Dkt. 17) is granted, Adams' request for a Rule 56(d)

10  continuance is denied, and this case is closed.

11  Dated this 7th day of December, 2021.

12

13  _____
   David W. Christel
14  United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24